IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BCCA APPEAL GROUP, TEXAS ASSOCIATION OF BUSINESS, AND TEXAS OIL AND GAS ASSOCIATION,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, STEPHEN L. JOHNSON, in his official capacity as Administrator of the United States Environmental Protection Agency, and RICHARD GREENE, in his official capacity as Regional Administrator for Region VI of the United States Environmental Protection Agency,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 3:08-CV-1491-G |

**REPLY IN SUPPORT OF PLAINTIFFS BCCA APPEAL GROUP, TEXAS ASSOCIATION OF BUSINESS, AND TEXAS OIL AND GAS ASSOCIATION'S <u>APPLICATION FOR LITIGATION COSTS AND ATTORNEYS' FEES</u>**

This case is not an average enforcement case.  It extended over period of 18 months and involved more than 30 revisions to Texas's State Implementation Plan ("SIP").  Through this lawsuit, Plaintiffs BCCA Appeal Group, Texas Association of Business, and Texas Oil and Gas Association (collectively, "Plaintiffs") forced Defendants United States Environmental Protection Agency, Stephen L. Johnson, Administrator of the U.S. Environmental Protection Agency, and Richard Green, then-Regional Administrator for Region VI of the U.S. Environmental Protection Agency (collectively, "EPA"), to finally take action on Texas's submissions.  Notwithstanding EPA's failure to perform its statutory duties for, in some cases, over 14 years, Defendants now contend that they should not bear the full cost of this suit.  Only

through this suit, however, did EPA finally agree to perform its long-overdue, statutory duties. As compensation for forcing EPA to comply with its duties and as allowed by applicable law, Plaintiffs seek recovery for 274.4 hours of work over a period of 18 months. Eighty-two percent of the work for which Plaintiffs seek recovery was performed by one partner and one associate—both of whom specialize in environmental law. And all of the time for which Plaintiffs seek recovery was reasonable and necessary in the prosecution of this action. Plaintiffs' request for $114,571.52 in attorneys' fees and litigation costs therefore is reasonable.

I.   **This Case Is Distinguishable From the Cases EPA Identifies as Similar Cases**

   A.   **This Case Involved Numerous Submittals and Lasted Over 18 Months**

EPA attempts to compare this case to others its claims are comparable. *See* Resp. 6-9, 23-24. Its comparisons, however, are flawed. EPA first cites *Desert Rock Energy Co. v. EPA* as a similar case. In that case, however, the plaintiffs brought suit to force EPA to take final action on one permit application related to the construction of a coal-fired power plant. *Desert Rock Energy Co., LLC v. EPA*, No. H-08-872, 2009 WL 3247312, at *1 (S.D. Tex. Sept. 29, 2009). Less than 5 months after the plaintiffs filed their complaint, EPA issued a final permitting decision—effectively mooting the plaintiffs lawsuit—and the parties agreed to a dismissal of the plaintiffs' suit. *Id.* EPA also cites *Rocky Mountain Clean Air Action v. Johnson* as a similar case. Like in *Desert Rock*, the plaintiffs in *Rocky Mountain* brought suit against EPA for failing to act on two permit applications related to the construction of a coal-burning cement plant. *Rocky Mountain Clean Air Action v. Johnson*, No. 06-1992 (JR), 2008 WL 1885333, at *1 (D.D.C. Jan. 28, 2008). Two months after the plaintiffs' filing, EPA acted on one of the permits, and EPA took action on the other permit four months later. *Id.* Thus, within six months, the plaintiffs' claims were moot.

This case does not involve similar, swift action by EPA that mooted Plaintiffs' claims. Although it could have, EPA did not act for 14 years and certainly did not act on Texas's submittals early on in the litigation. Such action would have rendered Plaintiffs' lawsuit moot. Instead, the parties pursued their own litigation strategies, engaged in settlement negotiations, and eventually agreed on a consent decree setting forth a series of deadlines for EPA action, many of which occur in the future. *See* Exhibit 1 to Consent Decree. Plaintiffs therefore still await EPA action on many of the submittals. Moreover, unlike the cases cited by EPA, this case involved over 30 submittals from the State of Texas that were submitted to EPA over a period of approximately 14 years. This is not a case in which EPA was one or two years late in issuing actions on one or two permits. Rather, EPA neglected its duties for, with respect to some of the submittals, over a decade.

Because this case involved so many submittals upon which EPA has failed to act, it took a longer period of time to prosecute and settle this litigation. *See* App. 24. Plaintiffs gave the required 60-day notice of intent to sue on May 27, 2008. The parties did not reach a settlement agreement and lodge the Consent Decree until July 2009, and the parties did not move for a stay of the case and entry of the Consent Decree until October 2009. The Court granted the motion to stay in November 2009 and entered the Consent Decree in January 2010. Thus, approximately 18 months elapsed between Plaintiffs giving notice of this suit and the Court staying the case, and an additional three months elapsed before the Court entered the Consent Decree. Most of the cases included in EPA's Appendix and cited as similar cases did not extend over nearly this long a period of time and certainly not after a failure to act by EPA spanning 14 years. *See* EPA App. 20-21 (case lasting only 7 months from the filing of the complaint to entry of the consent decree); *id.* at 25-26 (case lasting 2 months); *id.* at 34 (case lasting 2 months); *id.* at 43-44 (case

lasting 7 months); *id.* at 53-54 (case lasting 8 months); *id.* at 68-69 (case lasting 7 months); *id.* at 87-88 (case lasting 11 months); *id.* at 93-94 (case lasting 13 months); *id.* at 105-06 (case lasting 13 months); *id.* at 111-12 (case lasting 5 months); *id.* at 120-21 (case lasting 6 months). Plaintiffs do not contend that the parties actively litigated this case throughout its entire 18-month duration, but Plaintiffs' submit that the length of duration distinguishes this case from others. *See* App. 24. Had this case been as straightforward as EPA contends, it would not have taken 18 months to litigate and then negotiate the Consent Decree and associated settlement agreement, reduce the parties' agreement to writing, and come to a resolution on the merits of this case.

### B. This Case Essentially Involved Two Dispositive Motions

Highlighting the lack of dispositive motions in this case as a point of comparison also is misleading. *See* Resp. 7-9. In actuality, this case involved two dispositive motions—a motion for summary judgment and a motion to dismiss. Plaintiffs' strategy for prosecuting its claims centered around filing a motion for summary judgment early in the case. *See* App. 22. Armed with the knowledge that EPA had neglected its duties for over 14 years, Plaintiffs chose this aggressive tactic to force EPA either to try the case or to act on Texas's submittals. *See id.* In light of EPA's sustained neglect of its non-discretionary duties, Plaintiffs' choice of strategy was reasonable. *See id.* at 22, 25. Implementing Plaintiffs' strategy and preparing for the summary judgment motion took considerable time and effort. *See id.* Plaintiffs' counsel developed a strategy for the motion and began gathering evidence for and conducting legal research associated with the motion. *See id.* at 22, 25; s*ee also, e.g.*, *id.* at 8-9 (M. Kuryla entries on 8/26/08, 8/27/08, 9/15/08, 9/20/08, and 10/07/08); *id.* (J. Moore entries on 9/08/08, 9/11/08, 9/26/08, and 10/02/08). Moreover, for the strategy to work, Plaintiffs decided that the motion must come swiftly—immediately after filing the Complaint—and that speed and timing might

force EPA to capitulate. *See id.* at 22. Although EPA makes much of the early settlement as a means to discount the summary judgment motion, the root of these settlement discussions and agreement was Plaintiffs' announcement that it intended to move, at the very beginning of the case, for summary judgment. *See id.* By announcing its strategy and being prepared to follow-up on its words with real actions, Plaintiffs pressed the case forward and pressed EPA into meaningful settlement negotiations that culminated in an agreement ending the 14 years of inaction. *See id.* Moreover, the occurrence of settlement discussions early in the litigation did not obviate the need to press on with the work toward the summary judgment motion. To the contrary, prudent and reasonable representation required an evaluation of all reasonable means of accomplishing the client's objectives, and here that meant being ready, willing, and able to quickly draw the case to summary judgment. Plaintiffs' strategy, and Plaintiffs' implementation of that strategy, were reasonable and necessary in light of the circumstances of this case. *See* App. 22, 25.

In addition to a motion for summary judgment, this case also involved a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). During the litigation, EPA informed Plaintiffs' counsel that it intended to file a motion to dismiss the case based upon alleged jurisdictional defects. *See* App. 23-24. Once informed, counsel legitimately began researching the jurisdictional issue. *See id.* EPA concedes that this work was legitimate. Resp. 18. Plaintiffs' counsel researched the jurisdictional issues in question, including the applicability of a then-recent Supreme Court case, analyzed EPA's stated positions, and prepared to respond to those positions through its own filing with the Court. *See* App. 23-24; *see e.g.*, *id.* at 11-12 (M. Kuryla entries on 1/07/09, 1/08/09, 1/09/09, 1/13/09, 1/15/09, 1/26/09, 2/02/09, 2/12/09); *id.* at 11-13 (J. Moore entries on 1/07/09, 1/08/09, 1/14/09, 1/26/09, 1/27/09, 1/28/09, 1/29/09,

2/02/09, 2/03/09, 2/04/09, 2/11/09, 2/12/09).  All of this work was performed after EPA informed Plaintiffs of its intention to seek dismissal of the case.  *See id.* at 11, 23-24.  Thus, this work was reasonable and necessary in pursuing Plaintiffs' claims in this litigation.  *Id.* at 23-25.  EPA cannot now contend that such work was not necessary or was not reasonable in light of its own assertions and intentions to dismiss this case.

Furthermore, EPA recognizes that this case is not an average case.  Although EPA states that the average fees awarded in similar cases totals approximately $13,000, EPA concedes that an attorneys' fee award of $45,000 is appropriate and reasonable here.  *See* Resp. 2, 9, 24.  Thus, even EPA recognizes that this case is distinguishable enough to justify a award of fees that exceeds EPA's identified average by $32,000.

Unlike the comparable cases identified by EPA, this case is not one involving one or two permitting applications, and this case was not mooted by EPA's actions shortly after the filing of Plaintiffs' Complaint.  Unlike the comparable cases identified by EPA, this case involved legitimate work related to two dispositive motions.  That neither motion was filed does not render the time spent by Plaintiffs' counsel in connection with those two dispositive motions unnecessary or unreasonable.  Thus, the comparable cases identified by EPA are not truly comparable cases.

## II. Instances Where Plaintiffs Seek Recovery for Work Performed by Multiple Attorneys are Reasonable

EPA also makes much of the work performed by multiple lawyers in this case.  The fact remains, however, that 82 percent of the work for which Plaintiffs seek recovery was performed by one partner and one associate.  The Fifth Circuit "has never held that duplication of effort is unreasonable *per se*."  *Base Metal Trading, Ltd. v. OJSC "Novokuzketsky" Aluminum Factory*,

31 Fed. App'x 159 (5th Cir. 2001). Here, any duplication of effort was minimal, reasonable, and necessary for the prosecution of this action.

EPA points to four attorneys' review of a draft motion to stay as a "particularly egregious example" of work performed by multiple attorneys. Resp. 13. A review of the time entries, however, proves otherwise. EPA is correct that four attorneys—Messrs. Moore, Kuryla, Beckwith, and Janoe—all billed time to reviewing the motion. *See* App. 10. The total time billed for the work of the four attorneys is, at most, 2.3 hours. Mr. Moore, the primary associate working on this case, billed 0.8 hours to this task; Mr. Kuryla, the primary partner working on this case, billed 0.6 hours to this task. *See id.* (10/24/08 entries for J. Moore and M. Kuryla). Collectively, Messrs. Beckwith and Janoe billed 0.9 hours to the task. *See id.* (10/24/08 entries for V. Beckwith and J. Janoe). Moreover, as the motion was one to stay the litigation— essentially terminating the lawsuit for a period of time—it was necessary and reasonable to evaluate the draft motion thoroughly and thoughtfully to ensure the protection of Plaintiffs' interests in the suit. *See Walker v. U.S. Dept. of Housing & Urban Dev.*, 99 F.3d 761, 768 (5th Cir. 1996) (noting that compensation for multiple attorneys' time may be reasonable where a legitimate need exists for the involvement of more than one attorney); *Turner v. Oxford Mgmt. Servs., Inc.*, 552 F. Supp. 2d 648, 652 (S.D. Tex. 2008) (noting that compensation for multiple attorneys' time may be reasonable at "crucial times in the case"). With a maximum of 2.3 hours spent on reviewing a draft motion to stay, this is hardly an egregious example of "overlawyering." To the contrary, the small amount of time related to this important task demonstrates that Plaintiffs' request for fees is reasonable.

EPA also highlights time related to drafting Plaintiffs' Complaint as evidence of duplication and excessiveness in Plaintiffs' request for fees. *See* Resp. 13, 15. But again, a

review of the time entries reveals otherwise.  Mr. Moore spent 28.9 hours researching, drafting, and revising the Complaint in this case.  *See* App. 6-7 (J. Moore entries on 7/29/08, 7/31/08, 8/01/08, 8/11/08, 8/12/08, 8/13/08, 8/21/08).  His time entries reveal that he was the primary researcher and drafter of the Complaint.  *See id.*  Such work is appropriate for an associate attorney to perform.  *See Am. Petroleum Institute v. EPA*, 72 F.3d 907, 916 (D.C. Cir. 1996) (noting that research, compiling documents, and drafting motions is "work that may be ably done by an associate").  Moreover, the time entries reveal that Mr. Kuryla spent 19.1 hours on tasks that included revising the Complaint and communicating with Plaintiffs about the document.  *See id.* at 6-8 (M. Kuryla entries on 7/29/08, 8/01/08, 8/06/08, 8/11/08, 8/12/08, 8/14/08 8/15/08, 8/19/08, 8/20/08, 8/21/08, 8/22/08, 8/25/08, 8/26/08).  Mr. Beckwith's and Mr. Janoe's work in connection with the Complaint amounted to only 5.9 hours.  *See id.* at 6-8 (V. Beckwith entries on 8/11/08, 8/15/08, 8/19/08, 8/20/08, 8/25/08; J. Janoe entry on 8/01/08).  As Mr. Beckwith was the only attorney practicing in Northern District of Texas—and, indeed, has over 19 years' experience practicing in the district—it was reasonable for him to review and finalize the Complaint for filing in this Court.  *See Sierra Club v. EPA*, 625 F. Supp. 2d 863, 868 (N.D. Cal. 2007) (noting that the work of an attorney admitted in the district, which included reviewing pleadings prepared by an out-of-state attorney, reflected collaboration and coordination of efforts).  In this case, the Complaint instituted a citizen-suit against EPA, seeking redress for EPA's repeated failure to act on over 30 submissions from the State of Texas.  Work performed by multiple lawyers, therefore, was reasonable and necessary.  *See Turner*, 552 F. Supp. 2d at 652 (finding time billed by multiple attorneys for the same task reasonable where it occurred at "crucial times in the case").

The division of work between Mr. Kuryla and Mr. Moore also was reasonable. Here, the time entries reveal that Mr. Moore performed much of the legal research associated with this case and prepared an initial draft of many of the case documents. *See, e.g.*, App. 6-15 (J. Moore entries on 7/29/08, 7/31/08, 8/21/08, 9/08/08, 9/16/08, 10/13/08, 1/07/09, 1/08/09, 1/26/09, 1/27/09, 1/28/09, 3/04/09, 5/27/09); *see also Am. Petroleum*, 72 F.3d at 916. Although Mr. Kuryla participated in preparing and revising various case documents as well, such participation is not unreasonable. "[I]n most instances when associates are employed to work under the supervision of a partner, there is some duplication of time in that the associate must report and the partner must review, creating new billable hours not present when the partner does the work directly." *Am. Petroleum*, 72 F.3d at 916 (refusing to make an adjustment for allocation of time between partners and associates). In addition, Mr. Kuryla's time entries reveal that much of his time concerned formulating and implementing Plaintiffs' case strategies, negotiating the settlement with EPA, and ensuring that Plaintiffs were informed of critical case events. *See, e.g.*, App. 6-16 (M. Kuryla entries on 7/30/08, 8/11/08, 8/13/08, 9/8/08, 9/30/08, 10/22/08, 12/19/08, 1/06/09, 1/23/09, 2/13/09, 2/25/09, 3/02/09, 3/04/09, 3/10/09, 3/27/09, 4/15/09, 5/11/09, 10/02/09, 10/16/09). The time entries therefore reveal that Mr. Moore and Mr. Kuryla had separate roles in the litigation, and any duplication of their efforts was reasonable.

### III. EPA's Claims That the United States Should Not Bear the Full Cost of This Litigation Are Disingenuous

Not only are Plaintiffs' claimed fees reasonable as between Plaintiffs and their private lawyers, Plaintiffs' claimed fees are reasonable and appropriate for reimbursement by the United States. As explained above and in Plaintiffs' Application, EPA neglected to perform its statutory duty to make completeness determinations on numerous SIP revisions submitted by the State of Texas within six months of their submission. EPA also neglected to perform its statutory duty to

approve or disapprove, in whole or in part, Texas's submittals within 12 months of the completeness determination. With respect to some of Texas's submissions, EPA neglected its statutory duties for over 14 years.

Plaintiffs filed this citizen suit to force EPA to perform its long-neglected, statutory duties. By failing to act for such a long period of time, EPA made clear that it had no intention of acting on its own. The filing of this lawsuit was necessary to force EPA into action. Without this lawsuit, EPA likely would have neglected its duties in perpetuity. Through its lawsuit, Plaintiffs achieved ultimate success on its claims. EPA has agreed to a series of deadlines for actions on Texas's submissions, and the parties' agreement arising out of this litigation benefits all citizens. *See* App. 23. In a case such as this one, therefore, the fees and costs requested by Plaintiffs have "sufficient indicia of reasonableness for [the Court] to justify taxing this against the United States." *Am. Petroleum*, 72 F.3d at 916.

## IV.   CONCLUSION

For the reasons set forth above and in Plaintiffs' Application for Litigation Costs and Attorneys' Fees, Plaintiffs respectfully request that the Court grant the Application and award Plaintiffs $114,571.52 in litigation costs and attorneys' fees.

Dated:  April 16, 2010

                              Respectfully submitted,

                              **BAKER BOTTS L.L.P.**

                              By:*/s/ Van H. Beckwith*
                                  Van H. Beckwith
                                  State Bar No. 02020150
                                  2001 Ross Avenue, Suite 600
                                  Dallas, Texas 75201
                                  214.953.6500
                                  214.953.6503 (Fax)

        Matthew L. Kuryla
        State Bar No. 24000312
        J. Scott Janoe
        State Bar No. 24012897
        Jason C. Moore
        State Bar No. 24048671
        One Shell Plaza
        910 Louisiana Street
        Houston, Texas 77002
        713.229.1234
        713.229.2714 (Fax)

        **ATTORNEYS FOR PLAINTIFFS**
        **BCCA APPEAL GROUP,**
        **TEXAS ASSOCIATION OF BUSINESS,**
        **AND TEXAS OIL AND GAS ASSOCIATION**

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this Reply in Support of Plaintiffs BCCA Appeal Group, Texas Association of Business, and Texas Oil and Gas Association's Application for Litigation Costs and Attorneys' Fees was served upon the following counsel of record via CM-ECF and/or U.S. Mail, on the 16th day of April, 2010:

    Angeline Purdy
    Environmental Defense Section
    U.S. Department of Justice
    P.O. Box 23986
    Washington, D.C. 20026-3986
    Email: angeline.purdy@usdoj.gov

*/s/ Van H. Beckwith*
Van H. Beckwith